**Martin JIMENEZ, Appellant,**

v.

**Bruce BARBER, District Director of the Immigration and Naturalization Service for the Thirteenth Immigration District, Appellee.**

**No. 14923.**

United States Court of Appeals
Ninth Circuit.

July 12, 1956.

Rehearing Denied Aug. 30, 1956.

---

See also 226 F.2d 449.

McMurray, Brotsky, Walker, Bancroft & Tepper, Lloyd E. McMurray, San Francisco, Cal., for appellant.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge and HASTIE, Circuit Judge, and TOLIN, District Judge.

HASTIE, Circuit Judge.

Appellant Martin Jimenez is an alien. He filed his complaint in the district court for injunctive and declaratory relief challenging the action of a District Director of the Immigration and Naturalization Service in taking him into custody for deportation. The complaint concedes that there is lawful basis for appellant's deportation but asserts that the Attorney General has improperly disposed of his application for suspension of deportation under Section 19(c) of the Immigration Act of 1917, as amended.[1] More particularly, Jimenez alleges that the Attorney General granted him a hearing on his application for suspension of deportation but denied relief because of his "refusal to answer questions asked before the hearing officer * * * about his membership in or affiliation with certain organizations, including but not limited to the Communist Political Association and the Communist Party." The District Director moved to dismiss the complaint, arguing both that the Attorney General was an indispensable party and that the complaint did not state a cause of action. That motion was granted and this appeal followed.

In the light of Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868, we have concluded that the Attorney General was not a necessary party. True, the complaint put into issue the propriety of the handling of the

1. 62 Stat. 1206, 8 U.S.C. § 155, repealed by § 403(a) of the Immigration and Nationality Act of 1952, 66 Stat. 279, now 8 U.S. C.A. § 1254. However, a saving clause, § 405(a), 8 U.S.C.A. § 1101 Historical Note, prevented the repealer from affecting applications like the present one which had been filed before the effective date of the repealer.

petition for suspension of deportation by the Attorney General or his duly designated representatives. But, technically, the redress sought was relief from action taken and proposed by the defendant District Director to deport appellant. Here, as in the Shaughnessy case, 349 U.S. at page 53, 75 S.Ct. at page 595, "undoubtedly the Government's defense can be adequately presented by the District Director", who himself is the chief area representative of the bureau which administers immigration matters under supervision of the Attorney General. And though no order in this case would run against the Attorney General himself, again quoting the Shaughnessy opinion, 349 U.S. at page 53, 75 S.Ct. at page 595, "we cannot assume that a decison on the merits in a court of appeals on a question of this kind * * * would be lightly disregarded" by the responsible head of the Department concerned.

■ But, quite apart from this question of parties, we are satisfied that the complaint does not state a cause of action. Section 19(a) of the Immigration Act of 1917, as amended,[2] authorizes the Attorney General, within his discretion in certain hardship cases, to suspend the deportation of a deportable alien who has been residing in the United States for seven years and "has proved of good moral character for the preceding five years." If the suspension is for more than six months the Attorney General must submit a report on the case to Congress, and approval by Congress is required for continuation of the suspension of deportation. In this case it appears that when a warrant was issued on sufficient grounds for appellant's apprehension and deportation, he sought to invoke the Attorney General's discretion under Section 19(a) and was granted a hearing. · But his present complaint asserts that at that hearing he "refus[ed] to answer questions asked before the hearing officer in the depor-

tation proceedings about his membership in or affiliation with certain organizations, including but not limited to the Communist Political Association and the Communist Party." And for that reason, he asserts, the Attorney General denied the requested relief. We are asked to hold that such action by the Attorney General was an improper refusal to consider the application on its merits and to exercise the discretion vested in him.

We find no impropriety in the Attorney General's action. The answers to the questions might or might not have aided in judgment of the applicant's character and whether discretionary relief should have been afforded him. But in any event such questions were relevant and were within the legitimate area of inquiry in such a case as this. Cf. Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911; Garcia v. Landon, 9 Cir., 1953, 207 F. 2d 693. We cannot characterize as arbitrary an administrative conclusion that the very failure of the applicant to cooperate in this relevant inquiry in itself justified a refusal to treat him as deserving of discretionary relief from normal liability to deportation. Cf. United States ex rel. Bilokumsky v. Tod, 1923, 263 U.S. 149, 44 S.Ct. 54, 68 L.Ed. 221; Hyun v. Landon, 9 Cir., 1955, 219 F.2d 404. Rather, the administrative decision reflected a permissible exercise of discretion Congress has vested in the Attorney General for the disposition of such cases. Cf. Barreiro v. Brownell, 9 Cir., 1954, 215 F.2d 585; United States ex rel. Kaloudis v. Shaughnessy, 2 Cir., 1950, 180 F.2d 489.

Appellant makes one other point. Some time after this administrative ruling against him, he asked that his application be reconsidered, asserting that he then was willing to answer questions concerning his organizational affiliations during the preceding five years. The

2. Now 8 U.S.C.A. § 1251.

Attorney General refused to reopen the proceeding and appellant says this was arbitrary.

But, all other considerations aside, it is clear that appellant was still not agreeing to cooperate fully in the inquiry he himself was asking the Attorney General to make. While the statute spoke of "good moral character for the preceding five years", behavior before the beginning of that five year period might well have afforded some basis for inference concerning his character as it existed during the statutory period. It might also have had bearing upon the credibility of other testimony directly asserting what kind of person applicant was during the five year period. We think the Attorney General acted quite within his discretion in refusing to consider a second time the application of one who at first would tell nothing of his recent associations and later offered only to tell so much as he thought the authorities ought to know.

For these reasons, the judgment is affirmed.